IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIELDMARK, INC., | ) | |
| | ) | CASE NO.: 1:12 CV 223 |
| Plaintiff, | ) | 1:13 CV 572 |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| INSITE SOLUTIONS, LLC. | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant's Motions For Summary Judgment of Non-Infringement in case number 1:12 CV 223, (ECF #58), and in case number 1:13 CV 572, (ECF #16).  Plaintiff filed Memoranda in Opposition in both cases, (ECF # 72 and ECF #20, respectively), and Defendant filed Replies in support of its motions, (ECF #76 and ECF #21, respectively).  The Court heard oral arguments on the motions on October 22, 2013.  (ECF #91 in Case Number 12 CV 223).   After careful consideration of the briefs and a review of all relevant evidence and authority, Defendant's motions for Summary Judgment are, hereby, GRANTED.

## FACTS AND PROCEDURAL HISTORY[1]

ShieldMark, Inc. ("ShieldMark") is the owner by assignment of Patent No. 8,088,480 ("the '480 Patent") and Patent No. 8,343,292 ("the '292 Patent").  These patents protect the invention of an adhesive tape often used as an alternative to painting floor lines in industrial environments.  The ShieldMark product manufactured under these patents is known in the industry as "Mighty Line."  InSite Solutions, LLC ("InSite") is a former distributor of "Mighty Line" and is now manufacturing its own adhesive floor marking under a different name. ShieldMark claims that InSite's products infringe both the '480 and the '292 Patents.  In case number 1:12 CV 223, ShieldMark brought suit alleging that Defendant, InSite has been infringing claims 2 and 5 of ShieldMark's '480 Patent by making, using, selling, offering for sale, and/or importing adhesive tape sold under the names "Superior Mark Tape" and "Last Mark Isle Marking Tape.  In case number 1:13 CV 572 ShieldMark brought a separate suit against InSite for infringement of claims 1-3 of the '292 Patent.

The parties agree that the '292 Patent is a continuation of the patent application that issued as the '480 Patent, and they do not dispute that these two patents share the same inventor, same assignee, same specification, and same drawing.  They also agree that the same claim construction applied to the '480 Patent should apply to the '292 Patent. Finally, they appear to agree that infringement under all the asserted claims in this case is dependent on whether two claim elements are present in the allegedly infringing product, those being:

---

[1]

The facts and procedural history have been taken from the undisputed statements set forth in the parties' briefs, and official court records.  In accordance with the applicable standards on a motion for summary judgment, genuine questions of material fact have been resolved in favor of the non-moving party, in this case, the Plaintiff.

(1) whether the allegedly infringing product includes a "double sided adhesive layer," as required under claim 2 of the '480 Patent, and

(2) whether the allegedly infringing product has a "substantially uniform thickness," as required under claim 5 of the '480 Patent and claims 1-3 of the '292 Patent.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit's position that "'only admissible evidence may be considered by the trial

court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues

-5-

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  Further, summary judgment is as appropriate in a patent case as in any other type of case.  *Desper Prods., Inc. V. QSound Labs, Inc*., 157 F.3d 1324, 1332 (Fed. Cir. 1998).  The defense of non-infringement may appropriately be decided on summary judgment if no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused product either literally or under the doctrine of equivalents.  *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374 (Fed. Cir. 2007); *see also Lucent Technologies, Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008).

## ANALYSIS

A patent is infringed when a person "without authority makes, uses, offers to sell or sells any patented invention, with the United States . . . during the term of the patent."  35 U.S.C. § 271(a).   Under the "all elements rule," infringement can be found only when each and every element of a claim, or its equivalent, can be shown to be present in the accused product.  *De Marini Sports, Inc. v. Worth, Inc*., 239 F.3d 1314, 1331 (Fed. Cir. 2001)*; PSN Illinois, LLC v. Ivoclar Vivadent, Inc*., 525 F.3d 1159, 1168 (Fed. Cir. 2006).  Literal infringement occurs when each and every element of a claim is found to be literally present in an accused product. *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, *1308 (Fed. Cir. 2002);  DeMarini Sports,* 239 F.3d at 1331; *Panduit Corp. V. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  When an accused product is not found to literally infringe a patent claim, it may still be an infringing product under the doctrine of equivalents if the differences between an individual element of the claimed invention and an element of the accused product are sufficiently

-6-

insubstantial. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). The substantiality of the difference(s) is determined by using a three-part "function-way-result test." *Id.* at 40-41. Under this test, an accused product element is equivalent to a claimed element if it performs substantially the same function in substantially the same way to accomplish the same result. *Graver Tank & Mfg.* v. *Linde air Prods. Co.*, 339 U.S. 605, 608 (1950). The doctrine of equivalents does not apply, however, when an amendment, made for a reason substantially related to patentability, narrows the patent's scope enough to exclude the difference(s) at issue. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).

I. Double Sided Adhesive Layer

Claim 2 of the '480 Patent includes the requirement that the patented product contain a "double sided adhesive layer." Based on the patent language, the arguments presented during the claim construction briefing and oral argument, and application of the doctrine of claim differentiation, this Court found that "double sided adhesive layer" must be defined as "a layer of non-adhesive material with adhesive on both sides." (ECF #54, in Case Number 12 CV 223). The accused product in this case does not contain a layer of non-adhesive material with adhesive on both sides. Neither party disputes that there is no literal infringement of Claim 2 based on the Court's claim construction of this term.[2] Nonetheless, Plaintiff claims that the product infringes Claim 2 of the '480 Patent under the doctrine of equivalents.

---

[2] Plaintiff's expert, Dr. Serra, admitted in his deposition that he concluded that the accused products "do not have a layer of non-adhesive material with adhesive on both sides." (ECF #19-1: Serra Depo. at 56, in Case Number 13 CV 572).

-7-

To find for Plaintiff on this issue, the Court would have to find that the claim term "double-sided adhesive" is substantially indistinguishable in function, way, and result, from a "layer of adhesive," which is present in the accused product.  As set forth in the Court's claim construction opinion, however, claim differentiation requires the Court to recognize consequential differences in claims when the inventor uses different words in separate claims. *CAE Screenplates, Inc. v. Heinrich Fiedlern GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed. Cir. 1987). Because the '480 Patent distinguished the "double sided adhesive layer" in Claim 2 from the layers of "adhesive material" described in Claims One and Five, recognizing an adhesive layer that does not fit the definition of "double sided adhesive layer" as an equivalent would render the language in Claim 2 superfluous and would violate the principle of claim differentiation.  *Id.*

Plaintiff's position would apply the doctrine of equivalents in such a way as to vitiate a specific requirement in the claim at issue.  "[I]f a theory of equivalence would entirely vitiate a particular claim element … judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve." (emphasis in the original).  *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 469 F.3d 1005, 1017 (Fed. Cir. 2006), citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39 n.8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).  Neither this Court, nor any reasonable jury, can find that the Defendant's use of a single layer of adhesive that does not sandwich a "layer of non-adhesive material" is the equivalent of "a layer of non-adhesive material with adhesive on both sides" without completely eviscerating the "double-sided adhesive layer" requirement in Claim 2.

Further, the '480 Patent, by differentiating "double-sided adhesive" from "a layer of

-8-

adhesive" prevented a finding that the "way" portion of the "function-way-result" test could be met. While it may be argued that any adhesive may serve the same function and produce the same result (i.e., to adhere) as the "double-sided adhesive" called for in the Patent, the "way" in which double-sided adhesive works compared to other layers of adhesive was deemed significant and important enough to the inventor/applicant to require differentiation within the patent language.[3]   Therefore, the "way" portion of the "function-way-result" test is not satisfied, and the doctrine of equivalents does not apply. Defendant is entitled to summary judgment on the issue of infringement relative to Claim 2 in the '480 Patent.

II.  Substantially Uniform Thickness

Claim 5 in the '480 Patent, and Claims 1-3 of the '292 Patent all include a requirement that the protected product have "substantially uniform thickness." The Court defined this term as "a largely, but not necessarily wholly, uniform distance between the upper surface and the lower surface without significant deviations, protrusions or steps." (ECF #54, in Case Number 12 CV 223). As set forth in the Court's prior opinion, the terminology "without significant deviations, protrusions or steps" is an added limitation that the Court would not have adopted of its own accord. However, Plaintiff contended that the limitations were part of the definition as understood by the Patent Office and were necessary to overcome prior art and obviousness issues raised by that Office; and, the Defendants agreed to that interpretation. Therefore, the Court

---

[3]

  Furthermore, there is no evidence to suggest that a single layer adhesive would have worked in the same "way" as a double-sided adhesive in Plaintiff's product because prior to the addition of the "edge feature" or "channel" off-set by the steps in the accused product, there would have been no means of containing the adhesive strictly to the underside of the product without the potential for some degree of spread.

adopted these limitations as part of the claim construction.

Now, this limitation, argued for by the Plaintiff during claim construction, is the center of Defendant's argument that their product does not infringe Plaintiff's patents. Defendant argues that its accused product, which indisputably has steps and a graduated taper along each lateral edge, contains significant deviations and steps, and, therefore, does not contain the element of "substantially uniform thickness" under the Court's construction. Thus, its product cannot infringe Claim 5 of the '480 Patent, or Claims 1-3 of the '292 Patent under the all-elements rule.

A. <u>Literal Infringement</u>

The parties do not dispute that the accused product contains steps along each lateral edge. As Mr. Lowe, the Managing Director of InSite attested in his Declaration, the underside of Defendant's product has a central recess, set between two steps, one on each lateral edge of the product. (ECF #59-1,Lowe Decl. § 8, in Case Number 12 CV 223). Further, the polymer layer has tapered edges that diminish the thickness of the layer from the full center thickness of 0.027" to an edge height of zero. The transitional radius of the tapered edge is 0.187", with a tapering angle of 22 degrees. (Lowe Decl. § 9). The inventor of the Plaintiff's patent, Thomas Goecke testified that the accused product has steps, and that these steps have a function, which is to create "a channel to where adhesive is applied." (Goecke Depo. At 168-169). He further testified that Defendant's product has a tapered edge where "the thickness of the profile changes," and that this tapered edge serves the purpose of helping skids "slide across it rather than catch on the edge." (*Id.* At 171-172).[4] Even Plaintiff's expert, Dr. Serra, while opining that Defendant's product

---

[4]

Mr. Goecke also testified that the actual product he sought to patent included a beveled

-10-

contained no "significant deviations, protrusions or steps" recognized the thickness deviations at the accused product's edge.[5]  Further, during his deposition he acknowledged "the step" in the product.  (ECF #19-1, Serra Depo. at 84, in Case Number 13 CV 572).  Having reviewed all of the evidence presented by both sides, there is significant evidence from witnesses for both parties that the accused product had steps and a deviation in thickness.  Further there is no evidence that would support a finding to the contrary, and the existence of the steps and thickness deviation (manifested as tapered edges) is obvious to any observer of the product's specifications.

The question then becomes whether the steps and tapering are "significant" to the overall "uniform thickness" of the product, which is the only claim element limited by this terminology.  Defendant has presented evidence attesting to the significance of the steps and the tapering, both in terms of height or thickness of the product, and in terms of the functionality of the product.  As noted above, Mr. Goecke, the inventor of the patented product testified that the channel created by the steps on the accused product serves to create a channel to contain adhesive.[6]  He also testified that the tapered edge on the accused product served an important function by helping skids slide across the tape without catching.  Mr. Goecke testified during his deposition that having a beveled (or tapered) edge served to help skids ride over the tape and make it "more

_____

edge to assist in  preventing skids from catching on the edge of the tape.  (Goecke Depo. at 93-94).  The element of a beveled edge, however, was admittedly not included in the patent or the patent application.  (*Id*. at 93, 97).

[5]

Dr. Serra called the steps and tapering feature"an edge feature," "shoulder," and/or "recess" in various parts of his expert report.  (ECF #20-1, in Case Number 13 CV 572).

[6]

The channel, which would contain adhesive and keep it from oozing out, is presumably what allowed the accused product to avoid the use of double-sided adhesive, an element in Claim 2 of the '480 Patent

-11-

likely [pallets] will glide over the top of it rather than catch on the edge."  (ECF #76-1, Goecke Depo. at 95-97, in Case Number 12 CV 223).   He further indicated that in considering what he wanted in a floor marking tape, it was important that it "would have withstood impact from skids..." (Id. at 27).[7]  In addition, tapered edges were advertised as a benefit that would "eliminate potential tripping and impact hazards in connection with DuraStripe V tape, one of the earlier iterations of the patented product.

Mr. Lowe submitted a Declaration attesting to the functional significance of both the steps and the tapering on the polymer layer's edges.  He attested that the "recess, steps, radius and taper are structurally and functionally significant."  (ECF #51-1, ¶ 10, in Case Number 12 CV 223). He further described the function of the steps and the recess between as a means of "maintain[ing] the adhesive for securing the accused products to a floor, while preventing the adhesive from oozing out from beneath the products or raising the edge from the floor."  (Id. at ¶ 11).  In addition, he described the steps as being of "significant size" comparative to the overall thickness of the product, being that the depth of the steps was 18.5% of the overall thickness of the polymer layer.  (Id. at ¶ 12).  Finally, Mr. Lowe described the significance of the steps and thickness deviation from tapering as follows:

> The non-uniform nature of the polymer layer is significant for at least the reasons that (a) the steps and recess provide a container for the adhesive so that the area beneath the tapered edges can lie flat against the floor, without a layer of adhesive lifting them from the floor were they to be engaged by pallets, or equipment such as forklifts, (b) the 22° taper blends directly into the floor, with no flat abutting edge, helping to eliminate pallet dragging or equipment damage, and (c) the

---

[7]  He also admitted that although he included this feature in his own product in order to serve the above function, this feature was not included in the patent.  (ECF #76-1, Goecke Depo. at 95-97, in Case Number 12 CV 223).

radiused transition of 0.187" further accommodates overriding skids, pallets and
equipment with minimal risk of damage.

(Id. at ¶ 13).

The '480 Patent itself also indicates the significance of creating a product with "improved

tear resistance, strength and abrasion resistance" using a combination of "Shore A hardness,

textured surface and *layer thickness*," (emphasis added).  In so far as the recess created by the

steps on the accused product also functioned to keep the tape flat against the floor without any

raised edge created by adhesive, it also serves the same function of improving the tape's ability

lay flat against the floor and to withstand traffic from skids and pallets.  These statements all

provide evidence that the function imported by the steps and tapering on the accused product is

significant in so far as it allows the tape to lie flat with the floor and eliminates the potential for

skids and pallets to catch on the edge of the tape.  In addition, the steps have a depth that equals

18.5 % of the overall thickness of the polymer layer, which can be considered a significant size

step relative to the overall thickness.

Plaintiff argues that the steps and tapering are not significant.  In support of this argument

it has submitted the expert report of Dr. Serra, in which he opines that the accused product is

"without significant deviations, protrusions, or steps."  (ECF #20-1 at 4, in Case Number 13 CV

572).  The only support he offers for this opinion is his finding that the "edge features or opposed

shoulder portions," which are the tapering and steps described above, "account for less than 1%

of the overall area of the polymer layer," and "account for less than 1% of the overall weight of

the polymer."  (Id. at 5).  The significance of a feature must be determined in the context of the

element which is modified by that feature.  In this case, the element is the thickness of the

-13-

product.  Neither weight nor area specifications within the '480 or '292 Patents are modified by the phrase "without significant deviations, protrusions or steps."

This limitation applies only to the thickness of the product.  Dr. Serra's report does not address the significance of the steps and tapering of the accused product relative to the overall thickness of the product.

Dr. Serra himself admitted in his deposition that the claim limitation at issue speaks to the thickness of the product; that thickness correlates to the cross-sectional height of the polymer; that a step is normally considered in context of height; and, that although he did measure the height of the steps on the accused product and used this in his calculations, he did not base his conclusions on the height of the steps.  (ECF #19-1, Serra Depo, at 44-45, in Case Number 13 CV 572).  Dr. Serra also admitted that he accepted and relied on Mr. Lowe's calculation that the height of the steps is 18.5% of the overall thickness of the accused product. (*Id.* at pg. 47).   In addition, Dr. Serra testified that although he considered the functional significance of the steps "in his mind," he did not address functional significance in his report.  (*Id.*).   He did, however, understand that Mr. Lowe, whose testimony was provided by way of Declaration in support of Defendant's Motion for Summary Judgment, and was available prior to Dr. Serra's submission of his expert report, thought that the functionality of the steps was "quite significant." (*Id.*) Nonetheless, Dr. Serra did not choose to counter this conclusion, or otherwise address the issue in his expert report.

There is evidence before this Court that would show that both the steps and the tapering on the accused product are significant in both function and size (as compared to the overall

-14-

thickness of the product).[8] Plaintiff has presented no evidence that would suggest that the steps and tapering are not significant with regard to function or relative to the thickness of the product. Instead they provided an expert report that draws the conclusion that the steps are not significant in relation to the overall weight and area of the product. The limitation of no "significant deviations, protrusions or steps," however, does not relate to any claim element directed at the weight or overall area of the product. Therefore, Dr. Serra's conclusion is not relevant to the issue the Court must address. In short, there is evidence to support Defendant's position that the steps and tapering of the accused product are significant in relation to the thickness of the product, and in function; and, Plaintiff has offered no evidence to counter this argument in the relevant context of the thickness of the product.

Plaintiff offers additional arguments seeking to exclude consideration of the "edge features" when evaluating the alleged infringement of the accused product's polymer layer, and also arguing that "[t]he presence of an additional 'edge feature' does not save a finding of infringement because the open-ended language 'comprising' permits such an additional feature." (ECF #20, in Case No. 12 CV 223). The "edge feature" (comprising of the steps and tapered edge) is not a separate and distinct feature or element of the accused product. It is part and parcel of the polymer layer addressed in the Patent, and is distinguishable only by the variation in thickness that is also specifically addressed by the Patent language. The polymer layer is a single piece from edge to edge and in the accused product varies in thickness due to the steps and

---

[8] Because every element must be matched to find infringement, any aspect of the product that would exclude it from the claimed elements protects it from infringement. *See generally, TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008). In this case, significance in either size or functionality would be sufficient to meet the exclusion criteria of the claim language; there is evidence of both.

tapering.  There is  no separate piece or material added on to the sides of the polymer layer, and there is no basis for excluding the edge when considering whether the elements of the patent have been infringed.  Further, any open-endedness implied by the  word "comprised' in the Patents cannot override a specific exclusion or limitation described and included in the claim language, itself.  Plaintiff cannot argue that a significant step or deviation is permitted by the open-ended language "comprised," when the claim itself specifically excludes any product that contains significant steps or deviations.  *See, Kustom Signals, Inc. v. Applied Concepts, Inc.,* 264 F.3d 1326, 1332 (Fed. Cir. 2001).  Therefore, summary judgment in favor of the Defendant is warranted on the issue of literal non-infringement of Claim 5 of the '480 Patent, and Claims 1-3 of the '292 Patent.


B.  Doctrine of Equivalents

        Defendant has argued that Plaintiff is barred from asserting the doctrine of equivalents to establish infringement of Claim 5 of the '480 Patent because ShieldMark added the element "substantially uniform thickness" to its application, narrowing the scope of the original claim, in order to ensure patentability of its invention.  The patent examiner in the prosecution of the '480 Patent raised concerns over the patentability of ShieldMark's product, at least in part, due to the prior art contained in the Maurer patent (Patent 5,839,977).  In order to defend its application, ShieldMark distinguished Mauer as disclosing "a stepped configuration where  the thickness of the applique increases at each step."  ShieldMark also argued that Mauer would not meet the limitation of "substantially uniform thickness" within the '480 Patent because it "recites a tape including abruptly increasing thickness."  (ECF #59 at 8, in Case Number 12 CV 223).  This, in

-16-

fact, was the reason Plaintiff argued that the claim construction of "substantially uniform thickness" should include the limitation "without substantial deviations, protrusions or steps" during the earlier proceedings in this case.  As previously noted, this is not a limitation that the Court would have imposed on its own, based on the plain language of the claim, but it was adopted because the parties agreed that it was the intended construction based on Plaintiff's arguments to the Patent office during the prosecution of the '480 Patent application.  Plaintiff has not countered Defendant's argument that prosecution history estoppel should bar the application of the doctrine of equivalents with regard to this claim element.   Therefore, the doctrine of equivalents cannot be applied to prove infringement under the circumstances of this case.


## CONCLUSION

For the reasons set forth above, the Defendant's Motions for Summary Judgment of Non-Infringement (ECF # 58 in case number 1:12 CV 223, and ECF #16 in case number 1:13 CV 572), are hereby GRANTED.  Judgment is entered in favor of Defendant, InSite, and these cases are dismissed.  IT IS SO ORDERED.


   /s/ Donald C. Nugent
Judge Donald C. Nugent
United States District Judge

Date:    November 19, 2013

-17-